608 A.2d 1297

**Rounsaville FLOOD**

v.

**ATTSGOOD REALTY COMPANY.**

**No. 1698, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

July 9, 1992.

Martin F. Cadogan, Baltimore, for appellant.

Francis B. Buckley, Baltimore, for appellee.

Argued before WILNER, C.J., and CATHELL and DAVIS, JJ.

DAVIS, Judge.

On April 25, 1989 in the Circuit Court for Baltimore City, Rounsaville Flood, appellant, filed a Complaint and Demand for a Jury Trial against Attsgood Realty Company, appellee, alleging that he suffered injury on the appellee's property on August 28, 1987. The appellant is a Baltimore City police officer who claimed that he was injured when he fell through the floor of the appellee's building while searching for a drug suspect.

The appellee answered in a timely fashion and subsequently filed a Motion for Summary Judgment. The appellant filed an Opposition to the appellee's Motion for Summary Judgment.

After a hearing on July 15, 1991, the trial court granted the appellee's motion for summary judgment. The appellant now asks that we review

whether the court erred in granting the appellee's Motion for Summary Judgment, by determining if the appellee landowner engaged in wilful and wanton misconduct that injured the appellant, instead of allowing the jury to decide such a question of fact?

### Facts

On August 28, 1987, the appellant, a Baltimore City Police Officer, received information from a citizen regard-

ing possible narcotics activity occurring inside 1542 Abbotston Street. That property was owned by the appellee.

The appellant, along with other officers, entered the premises to investigate. The building appeared vacant and uninhabitable with several windows broken out, a side door that was hanging open, and no back door. Evidence of drug usage was visible throughout the building. The appellant went to the second floor of the building to investigate and noticed a visible hole in the flooring. The appellant successfully avoided that hole. The appellant's partner called to him, and as he ran to assist, the appellant stepped on a large piece of gray plywood. Unbeknownst to the appellant, the plywood covered yet another opening in the second story flooring. The plywood gave way, and the appellant fell through the opening and was injured.

The owner of the property denied any knowledge of the opening in the floor or the fact that the opening was covered with thin plywood. Eugene D. Goodman, president of Attsgood Realty, admitted that he had never actually visited the property prior to the time of this incident and could provide relatively little information regarding it.

### Legal Analysis

Maryland Rule 2–501, provides:

(a) **Motion.**—Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if filed before the day on which the adverse party's initial pleading or motion is filed.

Judge Rosalyn Bell, writing for this Court, noted:

The purpose of the summary judgment procedure is to dispose of cases where there is no genuine factual controversy. Summary judgment is not, however, designed as a substitute for trial, but a hearing to determine whether a trial is necessary. "The critical question for the trial court on the motion for summary judgment is whether

there exists a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts."

*Laws v. Thompson,* 78 Md.App. 665, 674, 554 A.2d 1264 (1989) (citations omitted).

■ Recovery in an action for negligence requires proof of some duty, a breach of that duty, proximate causation, and damages. In the present case, for us to disturb the trial court's ruling on appeal, the appellant must show that there was either a genuine dispute as to a material fact involving at least one of the above elements or that appellee was not entitled to judgment. As we shall explain, we perceive no legally cognizable factual dispute from the record before us; and from the undisputed facts alleged, appellee was entitled to judgment as a matter of law.

As appellant correctly observes, the duty owed to a person by an owner or occupant of land is determined by that person's purpose for being on the property. Maryland Courts have, on numerous occasions, considered, in premises liability cases, whether the status of the plaintiff on the property of the defendant was that of trespasser, invitee, or licensee. The Court of Appeals in *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978), explained:

An invitee is in general a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business; the owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. A licensee is generally defined as one who enters the property with the knowledge and consent of the owner but for his own purposes or interest; the owner owes no duty to a licensee under the traditional common law view except to abstain from wilful or wanton misconduct or entrapment. [Citations omitted.]

Traditionally, police officers and fire fighters are held to be licensees when they enter property in the performance of their duties, and as such, the property owner or occupant owes only the duty to abstain from wilful or wanton conduct. The *Sherman* Court went on to explain that the reason police officers and fire fighters were considered licensees was that "they were likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparing for the visit cannot be expected and a duty to make the premises reasonably safe for them at all times would constitute a severe burden." *Id.,* 282 Md. at 243, 384 A.2d 76.

As a licensee, the duty owed to the appellant was to abstain from wilful and wanton conduct or entrapment. The appellee would only be able to engage in such conduct, thus breaching his duty, to the extent that the appellee knew of the appellant's presence on the premises. No evidence was adduced that the appellee was aware of the defect or the appellant's presence on the premises, and therefore no duty was owed to the appellant.

## Public Policy

The modern trend, however, adopts a public policy approach rather than a strict territorial or geographic approach in determining the status of an officer or fire fighter on land. The Court of Appeals has most recently articulated the modern trend in *Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987). In *Flowers,* a volunteer fire fighter fell down an open twelve story elevator shaft while responding to a fire. The fire fighter brought suit for damages against the building owners alleging negligence.

In its analysis, the Court of Appeals noted that a number of jurisdictions have concluded that fire fighters "do 'not fit comfortably within the traditional concepts' of landowner liability," *id.,* 308 Md. at 444, 520 A.2d 361, for much the same reasons outlined by the *Sherman* Court (*i.e.,* one generally has no notice and is therefore unable to prepare adequately for the arrival on the property of police officers

or fire fighters). The Court further recognized that some jurisdictions analogize the fire fighter's or police officer's performance of his or her duties to an assumption of the risks associated with those duties. They noted:

> Many cases emphasize a public policy derived from the unique relationship between firefighters and the public. The courts reason that firemen cannot recover for negligence in starting fires because it is precisely their duty to take all reasonable measures to protect lives and property from fires.

*Flowers*, 308 Md. at 446, 520 A.2d 361.

The Court concluded:

> We agree that the fireman's rule is best explained by public policy.... [I]t is the nature of the fire fighting occupation that limits a fireman's ability to recover in tort for work-related injuries. Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, *firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity.*

*Id.* at 447–48, 520 A.2d 361 (emphasis added) (citation omitted).

The Court cautioned, however, that

> firemen and policemen are not barred from recovery for all improper conduct. Negligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn.

*Id.* at 448, 520 A.2d 361.

Generally, recovery for injuries to fire fighters and police officers is allowed only where the condition

amounts to entrapment or where the owner's negligence can be said to be wilful and wanton. Obviously, knowledge by the owner of the defective condition is requisite. To the extent that there is knowledge of the condition, there also exists a duty on the part of the owner to warn of the condition, if, in fact, there is a definitive opportunity to warn the officer of the condition. In *Flowers, supra,* the Court of Appeals noted:

> The owner or occupant of the premises must, however, abstain from willful or wanton misconduct or entrapment. This encompasses a duty to warn of hidden dangers, where there was knowledge of such danger and an opportunity to warn.

*Id.,* 308 Md. at 443, 520 A.2d 361.

The Court of Appeals in *Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965), similarly noted:

> Even though the property owner might be held liable for negligence to a business visitor injured in the resulting fire, the cases are uniform in holding that, apart from failing to warn of hidden dangers and statutory violations, he is not liable to the fireman.

In the case *sub judice,* the appellant was clearly within the performance of his duties when he was injured. The only reason the appellant was on the premises was to investigate possible drug activity there and to search for a suspect. Under *Flowers, supra,* being in an admittedly unsafe and generally uninhabitable building looking for a drug suspect was a risk that the appellant assumed, on behalf of the public, when he accepted employment as a police officer, and therefore the appellee owed him no duty to make the premises safe.

If the appellee had created the danger or otherwise knew of the danger and knew that the appellant would be on the premises looking for a drug suspect and had an opportunity to warn the officer, the appellee would have had a duty to warn the appellant of the known danger. Here, no such duty arose. There was no showing that the

appellee knew of the condition or the fact that the appellant would be coming onto the premises. Because there was no knowledge, there could be no duty to warn, since the duty to warn presupposes knowledge of the defect. The duty to refrain from wilful and wanton conduct proscribes acts committed intentionally. The appellee could be held to have engaged in wilful and wanton conduct in allowing the hole in the second story flooring to exist only if the hole had come to its knowledge and appellee purposefully allowed the hole to continue to exist and then failed to avail itself of a definitive opportunity to warn the officer. Since the proffered evidence does not support this thesis, no duty was owed.

Thus, the appellee's motion for summary judgment was properly granted because there is no genuine dispute of material fact as to the first element of negligence—*i.e.,* there was no duty. Accordingly, we hold that the trial court did not err in granting the appellee's motion for summary judgment.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.